[Civ. No. 1020.   Third Appellate District.—December 31, 1912.]

## A. ROSSI, Plaintiff, Respondent, v. BEAULIEU VINE-YARD (a Corporation), Defendant, Appellant.

APPEAL FROM JUDGMENT—NEW METHOD—NOTICE OF ENTRY NOT GIVEN —REVIEW OF INSUFFICIENCY OF EVIDENCE TO SUPPORT FINDINGS.— Where an appeal from the judgment is taken within six months after its entry under the new method, and the record does not show that any notice of the entry of the judgment was given to the appellant, the appellant is entitled to a review of the insufficiency of the evidence to support the findings.

ACTION FOR UNPAID PRICE OF GRAPE CRUSHING MACHINERY—CROSS-COMPLAINT BY APPELLANT—GUARANTY—DEFECTIVE MACHINERY—DAMAGE BY LOSS OF WINE—OMISSION OF FINDING—REVERSIBLE ERROR.—In an action by the plaintiff herein to recover from the defendant herein the unpaid price of grape-crushing machinery sold to the defendant, in which the defendant appealing filed a cross-complaint alleging a warranty of the machinery, that it was defective and unfit for use, and had caused great damage to appellant in the loss of wine to the extent of thirty-six dollars per day for thirty-five days, and the court wholly failed to make any finding as to such loss of wine, the omission therein is fatal to the judgment for plaintiff in said action, and is reversible error.

ID.—CONSTRUCTION OF FINDINGS.—It is held that by no possible construction of the findings, can a finding awarding to the defendant reimbursement for expenses incurred in repairing the machinery, be held to furnish the remotest ground for the inference that, in awarding such reimbursement, the court took into account or included therein any damage which the defendant might have sustained by reason of the alleged loss of wine.

APPEAL from a judgment of the Superior Court of Napa County.    Henry C. Gesford, Judge.

The facts are stated in the opinion of the court.

Sterling Carr, for Appellant.

John J. Mazza, C. E. Trower, and F. L. Dreher, for Respondent.

HART, J.—This is an action to recover a balance of eight hundred dollars, alleged to be due the plaintiff under a certain contract, made and entered into between the said plaintiff, carrying on business under the name of A. Rossi & Co., in the city of San Francisco, and the defendant.

The trial was had before the court without a jury, and judgment was awarded the plaintiff in the sum of $561.09 and costs of suit.

This appeal is by the defendant from the judgment under the alternative method of taking such appeals.    (Code Civ. Proc., secs. 941a, 941b, 941c.)

The defendant, as indicated by the entitlement of this cause, is a corporation, engaged in the manufacture of wine in the county of Napa, this state.

The contract referred to and out of which this controversy grows was consummated through written correspondence between the plaintiff and the defendant, the former, insofar as the pleadings disclose, first addressing to George De Latour, the president and manager of the defendant, the following letter, dated at the city of San Francisco, on August 19, 1909:

"As per your inquire for a Must Pump, 4x4, and a grape crusher and Stemmer (combined) with shaft, belting, pulleys, pipes and fitting also, installation of same at your vineyard, at Rutherford, Cal., without the freight expenses, we will furnish all the above machinery and parts for the sum of $1000.00. We also guaranty you that the machinery shall work on good order.

"This price includes gasoline engine of 10 H. P.

"Yours very truly A. Rossi & Co.,

"A. Rossi."

To the foregoing letter, the defendant, by De Latour, replied as follows:

"Referring to your letter of even date and our conversation this morning with your Mr. Rossi, we beg to confirm the following purchase: You will supply and set up at our winery at Rutherford, as indicated by us, a must pump, grape crusher and stemmer combined of a capacity of not less than one hundred tons per day, with shaftings, beltings, pulleys, pipe and fittings complete, and a Peerless gasoline engine of ten H. P. without any expense to us except the freight and teaming from the Rutherford station to our winery, and carpenter and mason work, for the sum of one thousand dollars, payable five hundred dollars before the end of September, and five hundred dollars before the end of October, when all the machinery has proven to give satisfaction.

"It is understood that everything must be set up and in running order on or before September tenth, 1909.

"Very Truly Yours,

"Beaulieu Vineyard,

"per G. De Latour."

The plaintiff did not complete the delivery and installation of said machinery until the nineteenth day of September, 1909. This delay, the plaintiff claims and alleges in his complaint, was due entirely to the neglect of the defendant in not hav-

ing prepared the masonry work or the concrete foundation for the gasoline engine.

After the machinery had been installed, the defendant complained that it did not work satisfactorily or perform in the proper way the functions for which it was intended, and thus there arose between the parties differences to settle which they, on the fifth day of October, 1909, made and entered into an agreement in writing which, after reciting the differences existing between the parties as to the machinery and that the defendant intended at the date of said agreement to make a payment of two hundred dollars to the plaintiff on the contract price of the same, provided Rossi & Co. should "exchange the stemmer, and fix the said machinery so that it will operate satisfactorily for two days, after which said time said De Latour is to pay the said A. Rossi & Co. the further sum of three hundred dollars, said exchange and said satisfactory run of two days to take place before the 15th day of October, 1909," further provided: "Said G. de Latour further agrees to pay the balance of five hundred dollars by the end of October, 1909, providing the said machinery and equipment furnished complies with the guaranty of A. Rossi & Co. All of the other conditions of said original agreement are to remain in full force and effect, and the present payment of two hundred dollars and the foregoing is understood to be an attempt to settle the present difficulties. . . ."

At the time of the execution of the last-mentioned agreement, the defendant paid to the plaintiff the sum of two hundred dollars.

The complaint alleges that the plaintiff, after the execution of the said last-mentioned agreement, "did perform and carry out all of the conditions agreed to be performed by it under said agreement, dated October 5, 1909, and did exchange said stemmer on the 11th day of October, 1909, and did operate said machinery satisfactorily for two successive days, to wit: On October 11, 1909, and October 12, 1909, and that said machinery is now and ever since said 11th day of October, 1909, has been in good condition and operating in a satisfactory manner; that said A. Rossi & Co. has performed every and all of the conditions agreed by it to be performed under the agreement hereinabove referred to as well as under the agreement last hereinabove referred to."

The making of the agreements above referred to is not controverted by the answer, but it denies that the plaintiff at any time placed said machinery or any part thereof in good working order, and, in this connection, alleges: "That said machinery and every part of it has wholly failed to do and perform the work required of it, or in any particular to comply with the said guaranty of the said A. Rossi & Co.; that the piping in said machinery was not properly done, and that the same clogs up and prevents the machine from operating; that the gasoline engine mentioned in the complaint . . . does not work properly or sufficiently or according to the guaranty of the said A. Rossi & Co.; that the stemmer in said machinery does not operate properly, nor is the same properly constructed; that the pulleys and belts used in said machinery are not of the requisite size, or make or character; and that said machinery, and every part of it, has failed to do or perform the work for which it was intended and for which the said A. Rossi & Co. guaranteed its performance; that defendant . . . has often requested said A. Rossi & Co. to repair said machinery but they have wholly refused to so repair or perfect the said machinery, or to comply with their said guaranty"; the answer denies that the delay in installing said machinery was due to any fault or the neglect of the defendant in the preparation of the concrete foundation for the gasoline engine, but alleges that the delay in the installation of said machinery was occasioned solely by the neglect of said A. Rossi & Co.; denies that, subsequent to the fifth day of October, 1909, the said A. Rossi & Co. "did perform and carry out all the conditions agreed to be performed by it under said agreement dated October 5, 1909, and further denies that the said A. Rossi & Co. did operate said machinery satisfactorily for two successive days"; denies that said machinery has at any time worked satisfactorily or according to the terms of the agreement, or that it is now or at any time has been, since its installation, in good condition or operated in a satisfactory manner, and alleges that "the said machinery and every part of it fails to perform the work required of it, or for which it was intended, in a proper or satisfactory manner"; admits the payment by the defendant to A. Rossi & Co., on the fifth day of October, 1909, the

sum of two hundred dollars on account of and in accordance with the terms of said agreement.

The defendant also filed a cross-complaint, in which it pleads the agreement entered into between A. Rossi & Co. and the defendant, and alleges that the former guaranteed, in writing, that the machinery which said Rossi agreed to furnish to and install for the defendant would run and operate and perform the work for which it was intended in a proper and satisfactory manner; alleges delay in installing said machinery and that such delay was caused solely by the unwarranted neglect of the plaintiff; that by reason of said delay the "defendant and cross-complainant was prevented from complying with certain contracts which it had with the grape-growers in the vicinity of cross-complainant's vineyard, for the crushing of their grapes within said time, and was put to great loss and expense and inconvenience"; alleges that, by reason of the defectiveness of said machinery and its consequent failure to properly perform the work it was intended and warranted to perform, and the failure of Rossi to correct the defects therein after having been notified thereof and requested by the defendant to rectify the same, the defendant suffered the loss of three hundred gallons of wine on each of thirty-five days during which it endeavored "in good faith" to run and operate said machine and machinery, and that the value of said wine so lost is twelve cents per gallon; that the defendant was compelled, by reason of the "defective construction of said machinery and of its character, to employ an expert machinist to endeavor to remedy the defects in said machine, for which the defendant and cross-complainant incurred a liability, the amount of which is not as yet known to it"; alleges "that the present value of said machinery as so delivered and set up by the said A. Rossi & Co. does not exceed the sum of two hundred and fifty dollars."

The cross-complaint asks for judgment: That plaintiff take nothing against the defendant by reason of plaintiff's action, and, further, that the defendant and cross-complainant "do have and recover from said plaintiff the sum of two thousand and ten dollars, and, further, for such additional sums as defendant has incurred in an endeavor to repair said machinery, and for costs of suit."

The plaintiff answered the cross-complaint, specifically denying and admitting the material allegations of that pleading, according as such allegations were true or not true from the plaintiff's viewpoint.

The contention of the appellant is: 1. That the court erred in not finding as to the damage alleged to have been sustained by the defendant in the loss of wine during the period during which it endeavored, without success, because of the defectiveness of the same, to operate the machinery mentioned in the pleadings; 2. That the evidence does not support certain findings; 3. That the findings are irreconcilably inconsistent.

It is preliminarily objected by the plaintiff that, the appeal being from the judgment only, the question whether the evidence supports the findings cannot be reviewed. This appeal, as stated, is taken under the new or alternative method, and by the objection thus raised we understand the point is sought to be made that, because the appeal was not taken "within sixty days after notice of entry of judgment," the evidence cannot be considered or reviewed. (Code Civ. Proc., secs. 939, 941a, 941b, 941c.) The point is not well taken. The judgment was rendered and entered on the twenty-first day of April, 1910. The notice of appeal was served on the attorney for the plaintiff on the twenty-ninth day of April, 1910, and filed on the thirtieth day of said month. There is no evidence in the record of any notice of the rendition of the judgment having been served on the defendant. There can be no doubt that, under the circumstances as thus indicated, it is competent for this court, if it be found necessary, to consider the evidence, notwithstanding that the appeal is from the judgment only. (*Brown* v. *Coffee,* 17 Cal. App. 381, 383, 386, [121 Pac. 309, 311].)

As stated, it is claimed for a reversal of the judgment that the findings are contradictory, that some of them find no support in the evidence and that the court failed to make a finding upon a material issue submitted by the cross-complaint. While the judgment will have to be reversed for the last-stated reason—that is, because of the omission by the court to make a finding upon the question of damage from loss of wine alleged by the cross-complaint to have been sustained by the defendant by reason of the alleged defectiveness

of the machinery—still, it is deemed proper to examine the findings to some extent, since it is claimed, as stated, that they are in some respects in direct conflict with each other upon matters vital to the judgment.

The court found that the machinery did not prove satisfactory to the defendant from the time of its installation up to the fifth day of October, 1909, on which date the "supplemental agreement" was made. As to the manner in which Rossi & Co. complied with the terms of the agreement dated October 5, 1909, the court finds: "VI. That thereafter said A. Rossi & Co. did perform and carry out all of the conditions agreed to be performed by it under said agreement dated October 5, 1909, and did exchange said stemmer on the 11th day of October, 1909, and did fix said machinery and operate the same satisfactorily for two successive days, to wit: on October 11, 1909, and October 12, 1909," etc. The court then found (finding 7) that, by reason of the compliance with that part of the "supplemental agreement" calling for certain specified changes in the machinery and for the satisfactory operation of the same after such changes therein were made, the plaintiff was entitled to be paid by the defendant, under the terms of said "supplemental agreement," the sum of three hundred dollars. By finding 8 the court found: "That prior to said 5th day of October, 1909, and after said date, except as recited in finding VI hereof, said machinery did not prove satisfactory, and did not comply with the guaranty contained in said first agreement; that the actual value of said machinery after said 5th day of October, 1909, and up to the date of the commencement of this action did not exceed the sum of two hundred and fifty dollars; that the defendant necessarily expended between the delivery of said machinery and the commencement of this action in repairs thereto the sum of forty-five and twenty one-hundredths dollars in endeavoring, in good faith, to use the same for the purposes for which it was intended."

The court then found (finding 10) "that, on the 1st day of November, 1909, there became due and owing to the plaintiff from the defendant, on account of the purchase price of said machinery and for extras hereinbefore mentioned (the extras referred to were found to be of the aggregate value of $36.23—see finding 9), the further sum of $536.23, which

said sum has not been paid, but that the defendant, by reason of the difference in value of said machinery, and the loss sustained in operating the same, as aforesaid, is entitled to a deduction from said balance of the sum of $295.20, leaving the whole amount due, owing and unpaid from the defendant to the plaintiff of $541.03.''

Now, it appears to be the theory of the plaintiff that the ''supplemental agreement'' constituted an unconditional or definitive settlement of a part of the original agreement or the differences arising with respect thereto—that is to say, that said second writing, as far as it extended in the matter of settling said differences, was in the nature of an accord and satisfaction, and that the amounts thereby agreed to be paid by the defendant constituted a liquidated sum to be so paid regardless of whether or not the machinery thereafter complied with the terms of the guaranty (warranty) contained in the agreement as originally made. The court seems to have taken that view of the ''supplemental agreement,'' and, accordingly, having found that the actual value of the machinery was much less than that represented by the purchase price, made the allowance in that respect to the defendant with reference to the balance of five hundred dollars on the purchase price after the sums of two hundred dollars and three hundred dollars were disposed of as above indicated.

There can be no doubt that, upon its face, the writing of October 5th, or the ''supplemental agreement,'' as it is characterized by the court, is capable of the construction thus given it. On the other hand, it would seem to be absurd to so construe that transaction as to bring about the conclusion that the defendant was willing to pay one-half of the purchase price without any assurance that the machinery would ever operate any more satisfactorily than it had prior thereto. It would, therefore, seem to be the more reasonable to hold that the purpose of said ''supplemental agreement'' was to secure upon the part of the plaintiff the execution of the agreement as it was originally made according to the terms of the warranty contained in said agreement, and that it was not thereby intended by the parties to take any part of the original agreement out of the operation of the warranty. It is very clear that this was the defendant's conception of the

"supplemental" agreement, as we judge from the allegations
of the cross-complaint. It·is very probable, however, that the
meaning of said "supplemental agreement," as ascribed to
it by the court, was based upon the testimony of the parties,
explaining, as under the circumstances they should be per-
mitted to do, what was intended thereby in ·the respect re-
ferred to. We have not examined the testimony with a view
of determining this proposition, because, in the first place,
if there is any testimony regarding the matter, it is probably
conflicting, and the trial court's conclusion thereon would
perhaps be conclusive upon us, and, in the second place, as
declared, the cause will have to be remanded for the reason
above stated, and upon a retrial the question under consid-
eration will no doubt be fully examined and properly de-
cided. It is to be observed, however, that, upon the plain-
tiff's theory of the intent and effect of said supplementary
agreement, the court made a due and proper allowance for
the difference in the actual value of the machinery, as found
by finding 8, from that represented by the purchase price.
But upon the theory that the warranty contained in the
original agreement was not modified or limited in its opera-
tion by the supplemental agreement—that is to say, that by
said latter agreement it was not intended that the payments
provided for therein should be treated as liquidated or to be
made regardless of whether or not the machinery came up
to the test of said warranty—findings 8 and 10 are irrecon-
cilably conflicting, for, in the first-mentioned finding, the
court fixes the actual value of the machinery at two hundred
and fifty dollars and in the last-mentioned finding allows
against the ·defendant a sum vastly in excess of said sum.
Obviously, assuming that finding 8 speaks the truth as to the
actual value of the machinery, all that the court would be
authorized to allow against the defendant on that account
would be the sum as so found. Or, in other words, the de-
fendant, in such a case as this, would be entitled for the detri-
ment caused by the breach of the warranty to "the excess,
if any, of the value which the property would have had at
the time to which the warranty referred, if it had been com-
plied with, over its actual value at that time" (Civ. Code,
secs. 3313, 3314), which in this case means, as stated, the
difference between the actual value as found by the court

and the purchase price—the sum of seven hundred and fifty dollars.

But the consideration and solution of this whole question by the light of the suggestions we have ventured with reference thereto may be left to the trial court upon the retrial of the cause.

Now as to the point that the court failed to make a finding upon a material issue. As has been shown, the cross-complaint alleges that, because of the defectiveness of the machinery, and in endeavoring, in good faith, to run and operate said machinery, on thirty-five different days, the defendant suffered the loss of three hundred gallons of wine on each of said days, valued at twelve cents per gallon. In response to that issue, the witness, de Latour, the manager of the defendant, testified that the failure of the machinery to properly operate caused a loss to the defendant of about ten thousand gallons of wine of the value of twelve cents per gallon. Of course, it will not be disputed that a failure to find on a material issue to which evidence had been addressed is fatal to the judgment. But it is not always necessary to make a specific finding as to each of several material issues where the findings, taken as a whole or construed together, clearly enough show that they include the court's conclusion upon all the material issues (Hayne on New Trial and Appeal, 16th ed., p. 1356), and this is what counsel for the defendant contend is true in this case. It is argued that findings 8 and 10, read together, clearly show that the court found upon the question of the alleged damage from the loss of the wine. But we are satisfied that an analysis of those findings, by the light of the theory upon which the allowance was made on account of the difference in the value of the machinery, will not sustain counsel's view of the matter.

In finding 8, as we have seen, the court finds "that the defendant necessarily expended between the delivery of said machinery and the commencement of this action in repairs thereto the sum of forty-five and twenty-one hundredths dollars, *in endeavoring, in good faith, to use the same for the purposes for which it was intended,*" and in finding 10 it is found that the defendant is entitled to a deduction from said balance of five hundred dollars of the sum of $295.20,

"by reason of the difference in value of said machinery, and *the loss sustained in operating the same,* as aforesaid."

Now, in our opinion, rather than giving the language italicized in those two instructions the effect which counsel claim for it, a comparison of said instructions clearly discloses that the court did not therein take into account the damage which the defendant alleges that it sustained from the loss of wine. The cross-complaint, in paragraph X thereof, specifically alleges that the defendant was compelled, on account of the defective construction of the machinery and of its character, "to employ an expert machinist to endeavor to remedy the defects in said machinery, for which defendant and cross-complainant incurred a liability, the exact amount of which is not yet known to it." We think that it must be true that the sum of $45.20 allowed to the defendant by finding 8 was intended as reimbursement for the expenditure which the defendant alleges in the foregoing paragraph of the cross-complaint that he was required to make in an effort to remedy the defects in the machinery. In any event, it is plainly manifest, not only from finding 8 itself, but from an arithmetical calculation of the items constituting the total deduction allowed to the defendant by finding 10, that no allowance was made on account of the alleged loss of wine. Finding 8 declares that the sum of $45.20 constituted the sum expended by the defendant *in repairs to the machinery* between the delivery of the same and the commencement of this action. Now, then, it is only necessary to subtract the sum of two hundred and fifty dollars, found to be the actual value of the machinery, from the sum of $295.20, the total deduction allowed to the defendant from the total found coming to the plaintiff, to find that the $45.20 which the court allows the defendant in finding 10 for "the loss sustained in operating the same (the machinery), *as aforesaid,*" is the identical sum of $45.20 which the court declares in finding 8 was "necessarily expended by the defendant between the delivery of said machinery and the commencement of this action in *repairs thereto,* etc.

We are familiar with the rule as to the construction of findings as laid down in *Breeze* v. *Brooks,* 97 Cal. 72, [22 L. R. A. 257, 31 Pac. 742], cited by counsel for the plaintiff, and which rule is followed by many other cases, of which

one is from this court. (*Aetna Indem. Co.* v. *Altadena Min. Co.,* 11 Cal. App. 165, 173, [104 Pac. 470].) In the Breeze case it is said that "the findings of the trial court are to receive such a construction as will uphold rather than defeat its judgment thereon, and whenever from the facts found by it, other facts may be inferred which will support the judgment, such inference will be deemed to have been made by the trial court, and upon an appeal from that judgment, this court will not draw from those facts any inference of fact contrary to that which may have been drawn by the trial court for the purpose of rendering such judgment." But it is very clear that by no possible construction can the finding in the case at bar awarding the defendant reimbursement for expenditures in repairing the machinery be held to furnish even the remotest ground for the inference that, in awarding such reimbursement, the court took into account or included therein any damage which the defendant might have sustained by reason of the alleged loss of wine.

The defendant, as stated, was undoubtedly entitled to a finding upon the issue under consideration, and, as before declared, the omission to make such finding constitutes an error fatal to the judgment.

The judgment is, therefore, reversed and the cause remanded.

Chipman, P. J. and Burnett, J., concurred.